IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JEWEL RHODES                                                                                      PLAINTIFF

v.                              NO. 3:14-cv-00096 JTK

CAROLYN W. COLVIN, Acting Commissioner                              DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Jewel Rhodes ("Rhodes") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Rhodes maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and appears to offer two reasons why.[1] She first maintains that her residual functional capacity was not properly assessed. It is her contention that inadequate consideration was given to her impairments, the "most significant" of which she identified as her neuropathy. See Pleading 10 at 9.

The ALJ is required to assess the claimant's residual functional capacity, which is

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by "at least some" medical evidence. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). [quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)].

The ALJ found that Rhodes has severe impairments in the form of asthma, obesity, and hypertension. He then assessed her residual functional capacity and found that she is capable of performing the following work-related activities:

> …lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to sit 6 hours total in an 8-hour workday and the ability to stand and/or walk 6 hours total in an 8-hour workday as defined in 20 CFR 416.967(b). She can occasionally climb stairs, balance, stoop/bend, kneel, crouch, and/or crawl, but should never climb ladders. She can see with corrective lenses, but must avoid jobs requiring excellent vision. She must avoid extreme heat; wetness; humidity; and concentrations of dust, fumes, gasses, odor, smoke, poor ventilation, or other airborne irritants. She must also avoid hazards like machinery and unprotected heights. Furthermore, [she] can frequently reach, handle, finger, and feel.

See Transcript at 12. In making the foregoing findings, the ALJ gave "significant weight" to the findings of Dr. Joseph Patterson, M.D., ("Patterson"), a consultative physician, and "some weight" to the findings of two state agency physicians. See Transcript at 14, 17. The ALJ also evaluated the non-medical evidence and discounted Rhodes' complaints of disabling pain.

Substantial evidence on the record as a whole supports the ALJ's assessment of

Rhodes' residual functional capacity. He adequately considered the medical evidence and "at least some" medical evidence supports the assessment he made. With respect to the non-medical evidence, the ALJ's evaluation of it was one of the acceptable evaluations permitted by the record.

The medical evidence reflects that Rhodes is sixty-one inches tall and has weighed as much as 350 pounds, see Transcript at 226, although by the time of the administrative hearing she only weighed 204 pounds, see Transcript at 29. Even at 204 pounds, her Body Mass Index is in the obese range. Her excessive weight likely contributes to her other problems, and the ALJ noted that likelihood and considered her weight in assessing her residual functional capacity. See Transcript at 14. There is no evidence his consideration of her weight and its affect on her residual functional capacity was improper.

Rhodes was seen at the Jonesboro Church Health Center ("Health Center") on several occasions between July of 2008 and November of 2010. See Transcript at 222-224, 254-258. The progress notes reflect that her complaints included difficulty breathing, a skin disorder, and symptoms associated with high blood pressure. Her breathing difficulties were largely attributed to asthma; her skin condition was diagnosed as dermatitis and, at times, eczema; and she was diagnosed with hypertension. Rhodes was prescribed medication, and it appears to have been of some benefit. Following her November of 2010 visit to the Health Center, she was not seen again until one year later. See Transcript at 250. In November of 2011, she presented complaining of a hand irritation and symptoms associated with high blood pressure. Some neuropathy was

noted, and dermatitis was again diagnosed. A topical cream was prescribed for her dermatitis. The progress note is silent as to whether her symptoms associated with hypertension were addressed. Rhodes does not appear to have returned to the Health Center until September of 2012 when she seen for laboratory work. See Transcript at 269-272. The ALJ noted the aforementioned findings and observations, see Transcript at 13-14, and appears to have considered them in assessing her residual functional capacity. It is difficult to ascertain what weight he gave the findings and observations, but there is no evidence he gave them inappropriate weight.

In August of 2011, Patterson performed a consultative examination of Rhodes. See Transcript at 225-229. His findings reflect, inter alia, that she cannot walk more than twenty to thirty feet before she has difficulty breathing, she experiences some chest pain, she has positive straight leg raises, and she has reduced grip strength. Otherwise, he found that her gait and limb function were within normal limits. He diagnosed obesity, dyspnea, hypertension, chest wall pain, asthma, cardiomegaly, and fatigue. The only limitation he imposed was that she has a "[m]oderate limitation in ability to bend, squat, kneel, stoop, or crouch." See Transcript at 229. The ALJ accorded Patterson's findings "significant weight" and incorporated them into the assessment of Rhodes' residual functional capacity. See Transcript at 14, 17. There is no evidence the ALJ's treatment of Patterson's findings was inappropriate. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984) (consulting physician's findings to be given limited weight).

In October of 2012, Rhodes was seen by the medical professionals at Cardiology

Associates of NEA for her complaints of chest pain. See Transcript at 274-277. She was diagnosed with chest pain and hyperlipidemia, although dyspnea, diabetes, and fatigue were also noted. She was prescribed medication for the impairments. The ALJ noted the aforementioned findings, see Transcript at 14, and appears to have considered them in assessing her residual functional capacity. It is difficult to determined what weight he gave the findings, but there is no evidence he gave them inappropriate weight.

In October of 2012, Rhodes was seen at St. Bernard's Hospital for her complaints of chest pain, shortness of breath, and palpitations. See Transcript at 273, 278-300.[2] Testing revealed that she had "[n]ormal coronary arteries" and "no significant coronary disease." See Transcript at 280. The ALJ noted those findings, although he did so in the context of determining the severity of her impairments. See Transcript at 11-12. His failure to consider the findings in the context of assessing her residual functional capacity, though, is not reversible error. They do not suggest or otherwise establish that she is more limited than the ALJ found.

State agency medical consultants subsequently reviewed Rhodes' medical records and opined that she is capable of performing medium work. See Transcript at 240-249. The ALJ gave their opinions "some weight" in assessing Rhodes' residual functional capacity but discounted their finding that she is capable of performing medium work. See Transcript at 17. He did so because he found that she is more limited than they opined.

---

[2] Rhodes had previously been seen at St. Bernard's Medical Center for a pulmonary function test. See Transcript at 230-239. The results of the test appear to have been inconclusive.

There is nothing to suggest that the weight he gave their opinions was inappropriate. See Sultan v. Barnhart, 368 F.3d 857 (8th Cir. 1984) (opinion of non-examining state agency consultant given little weight).

The ALJ adequately considered the non-medical evidence and did so in accordance with the factors outlined in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[3] He considered Rhodes' daily activities, activities that included preparing simple meals; doing laundry; washing dishes; driving a car, although she has not done so for several years; shopping; and going out alone. See Transcript at 15, 30, 164-169.

The ALJ considered the duration, frequency, and intensity of Rhodes' pain and could and did find that she made inconsistent representations about her pain. See Transcript at 15. She represented in a January of 2012 disability report form that her joints hurt all the time and her chest hurt "several times a week [and] sometimes several times a day." See Transcript at 188. Five months earlier, though, she represented in another disability report form that she "really didn't have pain–it is heaviness and a feeling that I can't breathe." See Transcript at 162. When asked how long the pain usually lasts, she wrote, "Does not apply." See Transcript at 162.

The ALJ considered the dosage, effectiveness, and side effects of Rhodes'

---

[3] As a part of assessing the claimant's residual functional capacity, the ALJ must evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering, "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

medication and could and did find that they do not establish her impairments are more limiting than he found. See Transcript at 16. During the administrative hearing, she testified to her use of medication. See Transcript at 32-33, 38. The medication was largely conservative and, at least with regard to her hypertension, has been effective in controlling her symptoms. See Transcript at 38.

The ALJ also considered Rhodes' functional limitations and restrictions due to her pain and could and did find it was worthy of limited weight. She represented that she has limitations in her ability to sit, stand, walk, lift, climb stairs, kneel, and reach. He incorporated some of those limitations into the assessment of her residual functional capacity, finding, inter alia, that she can only occasionally climb stairs, balance, stoop/bend, kneel, crouch, and/or crawl and should never climb ladders.

Rhodes maintains that the ALJ failed to give adequate consideration to her neuropathy and eczema. It is true she testified that she experiences symptoms associated with neuropathy and eczema, see Transcript at 38-41, and that the symptoms are noted in the medical evidence, see Transcript at 222, 224, 250. As the Commissioner correctly points out, though, the diagnosis of an impairment alone is insufficient. The ALJ must consider the work-related limitations caused by the impairments. In this instance, there is no evidence the symptoms give rise to any work-related limitations.[4]

"The ALJ is in the best position to gauge the credibility of testimony and is granted

---

[4] There is also no evidence that Rhodes' irritable bowel syndrome, dizziness, and dyspnea give rise to any work-related limitations.

deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, the Court finds that Rhodes has not offered a legitimate reason for deviating from the aforementioned rule. The evaluation of her subjective complaints made by the ALJ is one of the acceptable interpretations of all the evidence.

Rhodes appears to offer a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that he posed an improper hypothetical question to a vocational expert.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). Thus, "the hypothetical question answered by a vocational expert must include all those impairments that are substantially supported by the record as a whole." See Id., 118 F.3d at 1278-1279.

The ALJ posed a series of hypothetical question to a vocational expert that incorporated the limitations caused by Rhodes's impairment. See Transcript at 41-45. The vocational expert testified that someone with Rhodes' limitations could not perform Rhodes' past relevant work as a material handler and production utility worker, but there is other work in the national economy the hypothetical individual could perform. The vocational expert identified the other work as a packing and shipping clerk, a job identified in the Dictionary of Occupational Titles ast 222.587-018.

The ALJ did not err in crafting the questions to the vocational expert. The ALJ's

questions were adequately phrased as they captured the concrete consequences of Rhodes' limitations. It is true the questions did not incorporate her alleged limitations caused by neuropathy and eczema, but the ALJ could and did discount the impact those impairments have on the most she can do.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Rhodes' complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 19th day of May, 2015.

_____
UNITED STATES MAGISTRATE JUDGE